UNITED STATES DISTRICT COUR
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

WILLIAM MCGRATH,

    Plaintiff,

-vs-                                      CASE NO.:

CONN APPLIANCES, INC.,

    Defendant.

_____/

## COMPLAINT AND DEMANY FOR JURY TRIAL

Plaintiff, WILLIAM MCGRATH (hereinafter "Plaintiff"), sues Defendant, CONN APPLIANCES, INC. (hereinafter "Defendant"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA").

## INTRODUCTION

1. In describing the importance of the TCPA, Senator Hollings, the TCPA's sponsor, said "I echo Supreme Court Justice Louis Brandeis, who wrote 100 years ago that 'the right to be left alone is the most comprehensive of rights and the one most valued by civilized man.'" 137 Cong. Rec. 30.821 (1991).

2. Defendant placed hundreds of automated "robo-calls" to Plaintiff's cellular telephone without Plaintiff's prior express consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

## JURISDICTION AND VENUE

3. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

4. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

5. The principal place of business of Defendant is in The Woodlands, Texas. Accordingly, venue is appropriate with this Court under 28 U.S.C. § 1391(b)(1) as it is the judicial district in the State where the Defendant resides.

## FACTUAL ALLEGATIONS

6. Plaintiff is a natural person, and citizen of the State of Texas, residing in Collin County, Texas.

7. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

8. Defendant is a Delaware corporation with its principal place of business located in The Woodlands, Texas.

9. Defendant called Plaintiff's cellular telephone from its automatic telephone dialing system ("ATDS") hundreds of times, including multiple calls per day, in an attempt to contact an unknown third party.

10. Defendant's automatic telephone dialing system dials numbers automatically from a list of numbers, with no human intervention involved at the time of dialing, and is an automatic telephone dialing system as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227(a)(1) and the Federal Communications Commission's (FCC's) 2003 Order regarding the

TCPA. See *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14092 (2003); *Ammons v. Ally Financial, Inc.*, No. 3:17-cv-00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018).

11. Defendant's ATDS dials telephone numbers automatically from a list of numbers, with no human intervention involved at the time of dialing, and is an automatic telephone dialing system as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227(a)(1). See *Marks v. Crunch San Diego, LLC*, No. 14-56834, 2018 U.S. App. LEXIS 26883 (9th Cir. Sept. 20, 2018).

12. Defendant's automatic telephone dialing system is capable of generating random or sequential numbers to be dialed.

13. Plaintiff knew that an automatic telephone dialing system was being used to call him because he heard a pause or a "beep" when he answered Defendant's calls before being transferred to an agent. This is a commonly known indicator of the use of an ATDS, as the computer system must transfer the call to an available agent once a called party answers.

14. Furthermore, Defendant contacted Plaintiff on his cellular telephone using both an artificial voice and pre-recorded messages.

15. Plaintiff also received "abandoned calls" from the Defendant.

16. Abandoned calls occur when Defendant's automated system calls more customers than it has agents available, and as a result a customer who answers hears nothing but dead air, as the Noble Systems automatic telephone dialing system is unable to transfer the call it dialed to a live agent.

17. In total, Defendant uses its ATDS to make over 600,000 outbound calls *per day*.

18. At all times material, Plaintiff was the subscriber, regular user, and carrier of the cellular telephone number 214-***-3830 and was the called party and recipient of Defendant's calls.

19. Defendant placed hundreds of automated calls to Plaintiff's cellular telephone number 214-***-3830 in an attempt to contact an unknown third party.

20. Plaintiff has never had any business dealings with Defendant; nor has he ever provided Defendant with his prior express consent to receive calls made by an ATDS.

21. Defendant first began calling Plaintiff on his aforementioned cellular telephone number in or around August of 2015.

22. On or about August 3, 2015 Plaintiff first became the subscriber of the telephone number 214-***-3830.

23. Shortly after the phone number was activated, Plaintiff began receiving automated calls from Defendant.

24. Each time Plaintiff answered one of Defendant's calls, Defendant's agent(s) would ask to speak to a female third party that Plaintiff did not know.

25. Plaintiff did not at any point know the third party Defendant was asking for when it called Plaintiff; nor did Plaintiff have any business relationship with Defendant.

26. Shortly after Defendant's campaign of ATDS calls began Plaintiff answered a call from Defendant and advised that he did not know the party Defendant was calling, that Defendant had the "wrong number", and for Defendant to "stop calling!"

27. Despite this clear request for the calls to stop, Defendant continued to bombard Plaintiff with calls made through its ATDS.

28. Plaintiff went on to demand the calls stop on several more occasions to no avail.

29. In total, Defendant placed several hundred automated robo-calls to Plaintiff's cellular telephone in violation of the TCPA over a period of just a few months.

30. Eventually, in or around the end of 2015 Defendant stopped calling Plaintiff's cellular telephone number.

31. Each of the calls made after Plaintiff first advised Defendant that it had the wrong number was made in willful and knowing violation of the TCPA.

32. Defendant had no legitimate purpose in calling Plaintiff; nor did Defendant ever have Plaintiff's prior express consent to call him using an ATDS. Rather, Defendant displayed a pattern of behavior that can only be described as willful and knowing violation of the TCPA.

33. Despite clear and unequivocal requests for the calls to stop Defendant continued to bombard Plaintiff's cellular telephone number with automated calls dialed by its automatic telephone dialing system.

34. Defendant's calls interrupted Plaintiff at various times throughout the day, causing him unwanted stress, frustration, and anger in his personal and professional life.

35. Multiple agents of Defendant ignored Plaintiff's repeated requests to "stop calling" Plaintiff's cellular telephone number.

36. Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call individuals despite being requested to stop.

37. Defendant has admitted in legal documents filed with the United States Securities and Exchange Commission that it utilizes a "Predictive Dialer", which is a type of automatic telephone dialing system that dials numbers automatically from a list with no human being involved at the time of dialing.

38. Defendant has had numerous complaints against it from consumers across the country asking to not be called; however, Defendant continues to call these individuals.

39. Defendant's corporate policy provided no legitimate means for Plaintiff to have his cellular telephone number removed from Defendant's call list.

40. Not one of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

41. Defendant willfully and knowingly violated the TCPA with respect to Plaintiff as Defendant never had Plaintiff's prior express consent to contact him using an ATDS.

42. From each and every call placed without express consent by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

43. Defendant's non-stop calls drained Plaintiff's cellular telephone battery and occupied its ability to receive other calls.

44. Defendant's non-stop calls wasted Plaintiff's time.

45. Plaintiff was also affected in a personal and individualized way by stress, anger, loss of time, invasion of privacy, and frustration.

## COUNT I
### (Violation of the TCPA)

46. Plaintiff fully incorporates and re-alleges paragraphs one (1) through forty-five (45) as if fully set forth herein.

47. Defendant violated the TCPA for each of the ATDS calls it placed to Plaintiff's cellular telephone number without Plaintiff's prior express consent.

48. Defendant willfully and knowingly violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff first notified Defendant that Plaintiff wished for the calls to stop.

49. Despite Plaintiff demanding that the calls stop on multiple occasions, Defendant continued to bombard Plaintiff with calls for an unknown third party.

50. Defendant never had any business relationship with Plaintiff and had no legitimate purpose in calling Plaintiff.

51. It was unlawful for Defendant to call Plaintiff using its ATDS, an artificial voice, and/or pre-recorded messages as Defendant never had Plaintiff's prior express consent to contact Plaintiff using such technologies.

52. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or pre-recorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a final hearing on all issues so triable and judgment against Conn Appliances, Inc., for statutory damages of $500 per violation, actual damages, treble damages of $1,500 per call, enjoinder from further violations of these parts, costs, attorney's fees, and/or any other such relief the Court may deem just and proper.

        Respectfully submitted,


        <u>*/s/ Samuel M. Meyler*</u>
        Samuel M. Meyler
        Washington State Bar No.: 39471
        S. Dist. of Texas Bar No.: 2851115
        Eastman Meyler, PC
        2110 S. Lamar Blvd., Ste. G
        Austin, TX 78704
        Telephone: (512) 377-6857
        Fax: (512) 857-1462
        E-mail: sam.meyler@emfirm.com
        *Counsel for Plaintiff*