UNITED STATES DISTRICT COUR
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WILLIAM MCGRATH, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>CONN APPLIANCES, INC.,<br><br>    Defendant. | CASE NO.: 4:19-CV-01930<br><br>JURY TRIAL DEMANDED |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff, William McGrath ("Plaintiff"), individually and on behalf of all others similarly situated, sues Defendant, Conn Appliances, Inc. ("Defendant" or "Conn"), for violations of the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq*. ("TCPA"), and alleges on personal knowledge, investigation of his counsel, and on information and belief as follows:

## NATURE OF ACTION

1.   Plaintiff brings this class action for damages and other equitable and legal remedies resulting from the unlawful conduct of Defendant in negligently or knowingly and/or willfully placing calls to the cellular telephones of Plaintiff and putative Class Members for non-emergency purposes, using an automatic telephone-dialing system and/or pre-recorded or artificial voice messages without their prior express consent, in violation of the TCPA. Plaintiff and putative Class Members were not Conn customers at the time the calls at issue were placed. Upon information and belief, the calls they received from Conn were intended for persons other than Plaintiff and putative Class Members.

**JURISDICTION AND VENUE**

2. This Court has federal question jurisdiction over this matter because Plaintiff's claims arise from violations of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.*, which is a law of the United States. This Court also has original jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds $5,000,000.00, as each putative Class Member is entitled to $500.00 per call negligently placed in violation of the TCPA, or $1,500.00 per call knowingly and/or willfully placed in violation of the TCPA, exclusive of attorneys' fees, pre-judgment interest, and costs, and is a class action in which Plaintiff is a citizen of a state different from Defendant.

3. Venue is appropriate in this District pursuant to 28 U.S.C. §1391(b)(2), because many of the acts giving rise to this action occurred in this District, Defendant conducts business in this District, maintains its principal place of business in this District, and has intentionally availed itself of the laws and markets within this District.

**PARTIES**

4. Plaintiff, William McGrath, is and was at all times relevant to this matter a citizen of the state of Texas.

5. Defendant, Conn Appliances, Inc. is a Delaware corporation with its principal place of business located at 2445 Technology Forest Blvd., The Woodlands, Texas 77381. Defendant is a retail chain that sells furniture, mattresses, electronics and appliances to consumers through a variety of financing methods, including store credit cards, retail installment contracts, and lease-to-own programs. Defendant has more than 100 retail stores in Alabama, Arizona, Colorado, Georgia, Kansas, Louisiana, Mississippi, Nevada, New Mexico, North Carolina, Oklahoma, South Carolina, Tennessee, Texas, and Virginia.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227, *et seq.*

6. Section 227(b)(1)(A)(iii) bans the use of an autodialer to place telephone calls to cellular telephones unless the consumer has provided prior written consent to receive such calls, or the calls are placed for emergency purposes.

7. The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls. *Mims v. Arrow Fin. Servs., LLC*, --US--, 132 S. Ct., 740, 745, 181, L. Ed. 2d 881 (2012).

8. "Senator Fritz Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

9. According to the Federal Communications Commission ("FCC"), "[u]nwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014."[1] While the complaint numbers fluctuate year to year, unwanted robocalls and telemarketing calls remain a perennial problem for consumers (172,000 complaints in calendar year 2015, 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018).[2]

## FACTUAL ALLEGATIONS

---

[1] https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.
[2] Report on Robocalls, CG Docket No, 17-59 available at https://docs.fcc.gov/public/attachments/DOC-356196A1.pdf (last visited April 22, 2019); FCC, Consumer Complaint Data Center, https://www.fcc.gov/consumer-help-center-data (last visited April 22, 2019).

10. At all relevant times, Plaintiff was an individual residing in the state of Texas. He is a "person" as defined by 47 U.S.C. § 153(39), and the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

11. Plaintiff has been the holder of cellular telephone number 214-XXX-3830 (the full number is not being revealed for privacy reasons), since August 3, 2015, at which time his carrier assigned him this number. Plaintiff was the called party and recipient of Defendant's calls, as described herein.

12. Between August and October 2015, Defendant placed approximately 20 calls, including multiple calls per day, to Plaintiff's cellular telephone number using an automatic telephone dialing system ("ATDS") and/or pre-recorded or artificial voice.

13. Defendant's automatic telephone dialing system dials numbers automatically from a list of numbers, with no human intervention involved at the time of dialing, and is an automatic telephone dialing system as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227(a)(1) and the Federal Communications Commission's (FCC's) 2003 Order regarding the TCPA. See *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14092 (2003); *Marks v. Crunch San Diego, LLC,* 904 F. 3d 1041 (9th Cir. 2018).

14. Defendant's automatic telephone dialing system is capable of generating random or sequential numbers to be dialed.

15. Defendant's Noble automatic telephone dialing system is capable of operating in a "predictive" mode, whereby calls are made automatically from a list of numbers with no human being involved at the time of dialing.

16. Defendant's Noble automatic telephone dialing system is capable of operating in a "broadcast" mode, which utilizes both an artificial voice and pre-recorded messages.

17. Defendant also used pre-recorded messages to contact Plaintiff in violation of the TCPA.

18. Plaintiff received pre-recorded messages from Defendant on August 17, 2015 at 8:52 am; October 19, 2015, at 12:02 pm; October 19, 2015 at 2:57 pm; October 20, 2015 at 3:25 pm; October 20, 2015 at 7:47 pm; October 21, 2015 2:44 pm; and October 21, 2015 at 4:22 pm.

19. Each time Defendant delivered a pre-recorded message to Plaintiff's cellular telephone voicemail box, Plaintiff would listen to the recording which identified the message as coming from Defendant.

20. The automated calls to Plaintiff were initiated from multiple phone numbers assigned to Defendant. The calls consisted of calls made to contact a person unknown to Plaintiff. Specifically, Defendant identified "Sharla Stovall" as the intended recipient.

21. Plaintiff is not now, nor ever has been, a Conn customer, and does not have an account or business relationship with Defendant.

22. Plaintiff did not provide his cellular telephone number to Defendant in connection with a customer named Sharla Stovall, nor did he ever provide express consent for Defendant to place calls to his cellular telephone regarding the account of Sharla Stovall.

23. Plaintiff knew that Defendant used an automatic telephone dialing system to call him because he heard a pause or a "beep" when he answered Defendant's calls before being transferred to a live agent. This is a commonly known indicator of using of an ATDS, as the computer system must transfer the call to an available agent once a called party answers the phone.

24. Furthermore, Defendant contacted Plaintiff on his cellular telephone using both an artificial voice and pre-recorded messages on multiple occasions.

25. Plaintiff also received "abandoned calls" from Defendant.

26. Abandoned calls occur when Defendant's automatic telephone dialing system calls more customers than it has agents available and, as a result, a customer who answers hears nothing but dead air, since the Noble Systems automatic telephone dialing system – one of the ATDS systems utilized by Defendant – is unable to transfer the call it dialed to a live agent.

27. Defendant employs more than 750 agents in 6 call centers worldwide for the purpose of placing more than 660,000 outbound calls *per day* using an ATDS.

28. Defendant's automated calls, as received by Plaintiff, did not provide him the opportunity to opt out of or request the cessation of Defendant's calls, as evidenced by the fact that Defendant continued placing calls to Plaintiff's cellular telephone number after he informed Defendant that he was not the intended recipient and requested that the calls cease.

29. All of the calls that Defendant placed to Plaintiff's cellular telephone number were placed using an ATDS and/or pre-recorded or artificial voice which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or pre-recorded voice and to dial such numbers, as specified by 47 U.S.C § 227(a)(1).

30. Defendant has admitted in legal documents filed with the United States Securities and Exchange Commission that it utilizes a "Predictive Dialer," which is a type of automatic telephone dialing system that dials numbers automatically from a list with no human being involved at the time of dialing.

31. The telephone number that Defendant called to contact Plaintiff via an ATDS or pre-recorded or artificial voice was assigned to a cellular telephone service, as described in 47 U.S.C. § 227(b)(1)(A)(iii).

32. The pertinent calls were not placed for emergency purposes, as defined in 47 U.S.C. § 227(b)(1)(A).

33. Defendant's placement of calls using an ATDS or pre-recorded or artificial voice for non-emergency purposes and without Plaintiff's prior express consent violated 47 U.S.C. § 227(b)(1)(A).

34. Defendant has a corporate policy to use an ATDS or a pre-recorded or artificial voice to place calls to individuals, just as it did to Plaintiff's cellular telephone.

35. Defendant has a corporate policy to use an ATDS or a pre-recorded or artificial voice, just as it did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or Defendant, to cease the placement of calls.

36. Defendant's corporate policy is structured so as to continue to place calls to individuals like Plaintiff, despite consumer requests that Defendant cease placing calls.

37. Defendant's corporate policy provided no means for Plaintiff to have his number removed from Defendant's system, database, or call list.

38. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge that the called parties have no relation to Defendant and do not wish to be called.

39. As a result of each of the calls described above, Plaintiff and putative Class Members suffered an invasion of privacy, as well as particularized and concrete injuries. Plaintiff and putative Class Members also suffered out-of-pocket losses, including the monies paid to their wireless carriers for the receipt of such calls. Additionally, due to both the answered and

unanswered calls placed by Defendant, Plaintiff and putative Class Members suffered the expenditure of their time, exhaustion of their cellular telephone batteries, unavailability of their cellular telephones while Defendant's calls were incoming, and trespass upon their respective chattels. All of the above-mentioned injuries were caused by, and/or directly related to, Defendant's placement of calls to Plaintiff and putative Class Members by using an ATDS to call their cellular telephone numbers.

40. Each of the calls placed by Defendant to Plaintiff after he first advised Defendant that it had the wrong number was made in willful and knowing violation of the TCPA.

41. In response to Defendant's unlawful conduct, Plaintiff filed the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited cellular telephone calls, and an award of statutory damages and actual damages to putative Class Members under the TCPA, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

42. Pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and (c)(4) and as detailed in the individual counts below, Plaintiff brings this action on behalf of himself and all others similarly situated. Specifically, Plaintiff seeks to represent the following persons ("the Class" or "Class Members"):

> All persons within the United States who, between May 29, 2015 and the present, (1) received a non-emergency call to their cellular telephone numbers; (2) through the use of an automatic telephone-dialing system or an artificial or pre-recorded voice; (3) from Defendant; and (4) who were not Conn Appliances customers at the time of the calls.

Plaintiff hereby reserves the right to amend or modify the class definition after having had an opportunity to conduct discovery.

43. Excluded from the Class are Defendant, its employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their Court staff, and Plaintiff's counsel.

### Numerosity

44. At present, Plaintiff does not know the exact number of putative Class Members. However, given the fact that Defendant places 600,000 outbound calls per day and the volume of cellular telephone numbers reassigned on a daily basis[3], Class Members likely number in the thousands, if not hundreds of thousands, and are geographically disbursed throughout the country.

45. The alleged size and geographic disbursement of the putative Class, and relatively modest value of each individual claim, makes joinder of all Class Members impracticable or impossible.

### Predominance of Common Questions of Law and Fact

46. This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members. The common legal and factual questions include at least the following:

   a. whether Defendant uses an ATDS, or artificial or pre-recorded voice to place calls to cellular telephones;

   b. whether between May 29, 2015 and the present, Defendant used an ATDS or artificial or pre-recorded voice to place calls to the cellular telephones of Plaintiff and putative Class Members;

---

[3] According to the Federal Communications Commission, as many as 100,000 cellular telephone numbers are reassigned every day. *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961 (July 10, 2015).

c. whether between May 29, 2015 and the present, Defendant used an artificial or pre-recorded voice in connection with its placement of autodialed calls to the cellular telephones of Plaintiff and putative Class Members;

d. whether Defendant is subject to the TCPA;

e. whether Defendant can show that it obtained prior express consent from Plaintiff and putative Class Members to place calls to their cellular telephones using an ATDS or artificial or pre-recorded voice;

f. whether Defendant's conduct violates the TCPA;

g. whether Defendant's conduct was negligent;

h. whether Defendant's conduct was knowing and/or willful;

i. whether Defendant is liable for damages, and the amount of such damages;

j. whether Plaintiff and putative Class Members are entitled to declaratory relief;

k. whether Defendant should be enjoined from engaging in conduct in violation of the TCPA in the future; and

l. whether Plaintiff and Class Members are entitled to any other remedy.

## Typicality

47. Plaintiff's claims are typical of the claims of the putative Class Members, as Plaintiff and Class Members have been injured by Defendant's uniform misconduct – the placement of calls to cellular telephones using an ATDS or artificial or pre-recorded voice for non-emergency purposes and without prior express consent.

48. Plaintiff shares the aforementioned facts and legal claims and/or questions with all putative Class Members. Further, a sufficient relationship exists between Defendant's conduct and the damages sustained by Plaintiff and putative Class Members.

### Adequacy

49.     Plaintiff will fairly and adequately protect the interests of putative Class Members and is committed to the vigorous prosecution of this action. Plaintiff has retained counsel experienced in complex consumer class action litigation and matters specifically involving TCPA violations. Plaintiff intends to prosecute this action vigorously, and has no interest adverse or antagonistic to those of the Class.

### Superiority

50.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual joinder of all Class Members' claims is impracticable or impossible for at least the following reasons:

  a.     The Class claims predominate over any questions of law or fact (if any) affecting only individual Class Members;

  b.     Absent a Class, the Class Members will continue to suffer damage and Defendant's violations of the TCPA will continue without remedy;

  c.     Given the size of individual Class Members' claims, few (if any) putative Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed and continues to commit against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

  d.     Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts, while also increasing the delay and expense to all parties and the courts. Comparatively, the class action device

provides economies of scale and allows Class Members' claims to be comprehensively administered and uniformly adjudicated in a single proceeding;

  e. When the liability of Defendant has been adjudicated, claims of all Class Members can be administered efficiently and determined uniformly by the Court;

  f. No difficulty impedes the action's management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the damages caused to them by Defendant's uniform misconduct;

  g. The litigation and trial of Plaintiff's claims are manageable;

  h. Defendant has acted and/or refused to act on grounds generally applicable to Plaintiff and the Class by placing calls to their cellular telephone numbers, using an ATDS or artificial or pre-recorded voice, for non-emergency purposes and without their prior express consent, rendering just and appropriate final injunctive relief for the Class; and

  i. Because Plaintiff seeks injunctive relief and corresponding declaratory and equitable relief for the entire Class, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members and establishing incompatible standards of conduct for Defendant. Additionally, bringing individual claims would burden the courts and result in an inefficient method of resolving this action. As a practical matter, adjudications with respect to individual Class Members would be dispositive of the interests of other Class Members who are not parties to the adjudication and may impair or impede their ability to protect their respective interests. Consequently, class treatment is a superior method for adjudication of the issues in this case.

51. The Class is also ascertainable as Class Members can be easily identified through Defendant's outbound call records.

## CAUSES OF ACTION

### COUNT I
### Negligent Violation of the Telephone Consumer Protection Act
### 47 U.S.C. §§ 227, *et seq*.

52. Plaintiff incorporates by reference the allegations in Paragraphs 1 through 51, as though fully set forth herein.

53. Without prior express consent, Defendant placed calls for non-emergency purposes to the cellular telephones of Plaintiff and Class Members using an ATDS and/or artificial or pre-recorded voice with the capacity to store or produce telephone numbers to be called.

54. The foregoing acts constitute negligent violations of the TCPA, including, but not limited to, each of the above-cited provisions of 47 U.S.C. §§ 227, *et seq*.

55. Under 47 U.S.C. § 227(b)(3)(B), and as a result of the alleged negligent violations of the TCPA, Plaintiff and Class Members are entitled to an award of $500.00 in statutory damages for each and every non-emergency call placed in violation of the TCPA.

56. Plaintiff and Class Members are also entitled to and seek injunctive relief prohibiting future violations of the TCPA.

57. Plaintiff and Class Members are also entitled to an award of costs and expenses.

## COUNT II
### Knowing and/or Willful Violation of the Telephone Consumer Protection Act
### 47 U.S.C. §§ 227, *et seq.*

58. Plaintiff incorporates by reference the allegations in Paragraphs 1 through 51, as though fully set forth herein.

59. Without prior express consent, Defendant placed calls for non-emergency purposes to the cellular telephones of Plaintiff and Class Members using an ATDS and/or artificial or pre-recorded voice with the capacity to store or produce telephone numbers to be called.

60. The foregoing acts constitute knowing and/or willful violations of the TCPA, including, but not limited to, each of the above cited provisions of 47 U.S.C. §§ 227, *et seq*.

61. Pursuant to 47 U.S.C. § 227(b)(3)(B), and as a result of the alleged knowing and/or willful violations of the TCPA, Plaintiff and Class Members are entitled to an award of $1,500.00 in statutory damages for each and every non-emergency call placed in violation of the statute.

62. Plaintiff and Class Members are also entitled to and seek injunctive relief prohibiting future violations of the TCPA.

63. Plaintiff and Class Members are also entitled to an award of costs and expenses.

## COUNT III
### Declaratory Judgment Regarding Violation of the Telephone Consumer Protection Act
### 47 U.S.C. §§ 227, *et seq.*

64. Plaintiff incorporates by reference the allegations in Paragraphs 1 through 51, as though fully set forth herein.

65. Plaintiff and Class Members, as alleged above, received non-emergency calls placed by Defendant to their cellular telephones using an ATDS and/or artificial or pre-recorded

voice with the capacity to store or produce telephone numbers to be called, despite not providing prior express consent to Defendant to place such calls.

66. The Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.*, prohibits the placement of calls to cellular telephones for non-emergency purposes, using an automatic telephone-dialing system and/or pre-recorded or artificial voice messages, without the prior express consent of the called party.

67. As a result, Plaintiff is entitled to declaratory judgment as to whether Defendant's placement of calls to Plaintiff and Class Members violated the TCPA, and whether the violation was negligent or knowing and willful.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all putative Class Members the following relief against Defendant:

A. $500.00 in statutory damages for each and every call negligently placed by Defendant in violation of 47 U.S.C. § 227(b)(1) of the TCPA;

B. $1,500.00 in statutory damages for each and every call willfully and/or knowingly placed by Defendant in violation of 47 U.S.C. § 227(b)(1) of the TCPA;

C. An award of actual damages resulting from Defendant's violations of the TCPA;

D. Injunctive relief seeking the implementation of measures by Defendant to stop future violations of the TCPA;

E. Declaratory relief determining that Defendant's calls to Plaintiff and Class Members violated the TCPA and were negligent or knowing and willful;

F. An award of costs and expenses to Plaintiff's counsel;

G.   An order certifying this matter as a class action pursuant to Federal Rule of Civil Procedure 23, certifying the Class defined herein, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel; and

H.   Any additional relief that the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts so triable.

Dated:  July 16, 2019

Respectfully submitted,

**STECKLER GRESHAM COCHRAN PLLC**

*/s/ Bruce W. Steckler*
Bruce Steckler, Esq. (Texas Bar No. 00785039)
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Telephone: (972) 387-4040
Facsimile: (972) 387-4041
bruce@stecklerlaw.com

**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
John A. Yanchunis (Florida Bar No. 324681)*
Jonathan B. Cohen (Florida Bar No. 0027620)*
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-2434
jyanchunis@forthepeople.com
jcohen@forthepeople.com

*Attorneys for Plaintiff*

*\* pending pro hac vice admission*

## **CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure, the undersigned counsel for Plaintiff certifies that the foregoing document has been filed with the Court and served on all counsel of record via the Court's ECF filing system.

*/s/ Bruce W. Steckler*
Bruce W. Steckler